WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Calvin L. Raup and Angela J. Raup, husband and wife,<br><br>               Plaintiffs,<br><br>v.<br><br>Wells Fargo Bank, NA; et al.,<br><br>               Defendants. | No. CV-13-00137-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the Motion to Dismiss of Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). (Doc. 14.) For the reasons discussed below, the Motion is granted in part and denied in part.

**BACKGROUND**

Plaintiffs Calvin and Angela Raup are husband and wife who obtained a loan from Wells Fargo in March 2006 in the amount of $975,000. (Doc. 14 at 1.) The loan was secured by real property located at 7333 N. 2nd Drive, Phoenix, Arizona. (Docs. 7 at 1; 14 at 1.) After Plaintiffs defaulted on the payment obligation, Wells Fargo appointed Michael A. Bosco, Jr. as successor trustee. Bosco subsequently recorded a Notice of Trustee's Sale on the Phoenix property on February 10, 2012. (Doc. 14 at 2.) The property has since foreclosed. (Doc. 25 at 6.)

Plaintiffs filed suit on January 22, 2013, before the foreclosure sale occurred.

(Doc. 1-1 at 1.) They then filed a First Amended Complaint on February 5, 2013, asserting a total of eleven claims against Wells Fargo and other unknown parties. (Doc. 7.) Plaintiffs also moved for a Preliminary Injunction, which this Court denied on February 13, 2013. (Doc. 16.)

Plaintiffs allege that Wells Fargo entered into a Consent Judgment with the United States and other parties in April 2012 that required Wells Fargo to abide by certain standards relating to "loss mitigation, loan modification, and foreclosure of Arizona consumers' homes." (Doc. 7 ¶ 6.) They further allege that Wells Fargo "widely promoted" its adherence to the conduct guidelines set out in the Consent Judgment. (*Id.* at ¶ 9.)

Plaintiffs claim that they contacted Wells Fargo seeking a loan modification on September 6, 2011, on the basis of Wells Fargo's above "promises" regarding loan modifications. (*Id.* ¶¶ 12–13.) They assert that Wells Fargo, through its representatives, made a number of statements to Plaintiffs, all of which they allege are untrue. Such statements include telling Plaintiffs that they were "qualified for assistance," that corrected monthly billing statements would be provided, that their mortgage was not in active foreclosure, that they should ignore letters telling them to make regular mortgage payments and setting forth their rights relating to home ownership, and generally reassuring Plaintiffs that their request for assistance would be taken care of. (*Id.* ¶¶ 14–36.) Plaintiffs assert that in spite of their efforts and the various statements made by Wells Fargo representatives, their home has gone into foreclosure and a trustee's sale has been scheduled. (*Id.* ¶¶ 28–37.)

Plaintiffs assert the following causes of actions against Wells Fargo: (1) violation of the Arizona Consumer Fraud Act ("CFA") by conduct, (2) violation of the CFA by concealment or suppression of facts, (3) breach of contract, (4) violation of A.R.S. Title 33 Chapter 6.1, (5) negligent misrepresentation, (6) fraudulent concealment, (7) failure to hire, train, or supervise employees, (8) breach of consent judgment, (9) constructive fraud, (10) equitable estoppel, and (11) breach of the duty of good faith and fair dealing.

(*Id.* ¶¶ 38–72.) Wells Fargo moves to dismiss the First Amended Complaint in its entirety. (Doc. 14.)

## DISCUSSION

**I.    Legal Standard**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When a complaint does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation omitted).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

/ / /

/ / /

## II. Analysis

### A. CFA Violations (Counts One and Two)

The Arizona CFA grants an implied private right of action against persons who violate its provisions. *Dunlap v. Jimmy GMC of Tucson, Inc.*, 136 Ariz. 338, 342, 666 P.2d 83, 87 (Ct. App. 1983). To prevail on a CFA claim in Arizona, the plaintiff must show "(1) a false promise or misrepresentation made in connection with sale or advertisement of merchandise, and (2) consequent and proximate injury." *Stratton v. Am. Med. Sec., Inc.*, No. CV-07-1491-PHX-SMM, 2008 WL 2039313 at *7 (D. Ariz. May 12, 2008) (quoting *Kuehn v. Stanley*, 208 Ariz. 124, 129, 91 P.3d 346, 351 (Ct. App. 2004)). Because claims brought under the CFA involve allegations of fraud, they must be pled with particularity. *Silving v. Wells Fargo Bank, NA*, 800 F. Supp. 2d 1055, 1075 (D. Ariz. 2011).

Wells Fargo first contends that dismissal of these counts is appropriate under Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). It argues that Plaintiffs have failed to comply with Rule 8(a) because they do not specify which statements in the body of the Complaint form the basis of their CFA claims. (Doc. 14 at 6.) It cites cases that have dismissed complaints that had "the factual elements of a cause of action present but scattered throughout the complaint and not organized into a 'short and plain statement of the claim.'" *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 640 (9th Cir. 1988); *Daghlan v. TBI Mortg. Co.*, No. CV-12-01415-PHX-NVW, 2013 WL 179452 at *3 (D. Ariz. Jan. 17, 2013). Here, Plaintiffs specifically set out numerous statements allegedly made by Wells Fargo representatives and allege that they were false or misleading. The counts in the Complaint asserting CFA violations incorporate those allegations. In addition, they assert that they were damaged by those acts and that their home was foreclosed on despite assurances by Wells Fargo representatives. The Court does not find their allegations so scattered and disorganized as to warrant dismissal under Rule 8(a).

Wells Fargo further asserts that Plaintiffs fail to allege fraud with the requisite

particularity under Rule 9(b). Rule 9(b) has been interpreted in this Circuit to require the pleader to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986). In addition, the plaintiff must "set forth . . . an explanation as to why the disputed statement was untrue or misleading when made." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999). However, the state of mind or scienter of the defendants may be alleged generally. *Richardson v. Bury*, No. CV06-283-TUC-HCE, 2009 WL 1749688 at *7 n.7 (D. Ariz. June 19, 2009) (citing *Schreiber*, 806 F.2d at 1401).

Here, Plaintiffs have alleged the dates and specific contents of the claimed misrepresentations, as well as specifying whether the statements occurred by letter or by phone. However, each of these alleged misstatements is accompanied merely by an assertion that the statement was false, without "an explanation as to why [it] was untrue or misleading when made." *Yourish*, 191 F.3d at 993. The only exception is Paragraph 27 of the Complaint, in which Plaintiffs allege that Wells Fargo sent them letters advising them to make regular mortgage payments, but a Wells Fargo representative told them to ignore those letters. (Doc. 7 at ¶ 27.) Construed in the light most favorable to Plaintiffs, this allegation sufficiently implies a misrepresentation, as the two statements contradict one another—either the statement in the letter or the statement by the Wells Fargo representative was false. No other allegation in the complaint explains why the alleged misstatements were false.

Plaintiffs argue in their Response that Wells Fargo "intentionally misrepresent[s]" the claims in the Complaint. Thus, for example, they assert that their allegation of the falsity of Wells Fargo's promise to supply corrected billing statements is supported by the fact that Wells Fargo in fact never provided any billing statements. (Doc. 22 at 7.) While Wells Fargo may have failed to provide billing statements, this fact was not alleged in the First Amended Complaint, and thus is not an assertion that the Court must accept or consider in deciding the Motion to Dismiss. Plaintiffs' allegation in their

Response that Wells Fargo knew that those statements had never been provided is of no avail—in deciding a Motion to Dismiss, the Court looks at the Complaint, not other pleadings. Thus, Wells Fargo's Motion to Dismiss is granted on Plaintiffs' CFA claim for failure to comply with Rule 9(b) for all allegations except the ones set forth in Paragraph 27 of the First Amended Complaint.

Wells Fargo further argues that Plaintiffs failed to adequately plead reliance, which is an element of the CFA claim. *Peery v. Hansen*, 120 Ariz. 266, 269, 585 P.2d 574, 577 (Ct. App. 1978). However, Plaintiffs do allege that they relied on the numerous false statements by Wells Fargo set out in the Complaint, albeit not specifically in the sections asserting their CFA claims. Plaintiffs assert that they relied on Wells Fargo's representations in Paragraphs 53 and 57 of the Complaint. (Doc. 7 ¶¶ 53, 57.) Though these paragraphs are found in sections pleading negligent misrepresentation and fraudulent concealment, respectively, they assert reliance on the same statements that form the basis of Plaintiffs' CFA claims. Thus, Plaintiffs have plausibly alleged that they relied on Wells Fargo's representations so that they may overcome the Motion to Dismiss on this ground.

Finally, Wells Fargo asserts that Plaintiffs' CFA claims should be dismissed because they do not assert that the alleged misstatements were made in connection with "the sale or advertisement of merchandise." (Doc. 14 at 8.) However, under Arizona law, a loan is construed as a "sale" for the purposes of the CFA. *Villegas v. Transamerica Fin. Services, Inc.*, 147 Ariz. 100, 102, 708 P.2d 781, 783 (Ct. App. 1985). Plaintiffs have pled that Wells Fargo's misstatements were made in relation to their loan. (*See generally* Doc. 7 ¶¶ 14–36.) In addition, they specifically pled that Wells Fargo "widely promoted" their new practices pursuant to the consent judgment relating to loan modification and foreclosure. (*Id.* ¶ 9.) Under Arizona law, this qualifies as an "advertisement" for the purposes of the CFA. *Villegas*, 708 P.2d at 783–84. Plaintiffs' pleadings are thus sufficient to overcome a Motion to Dismiss on this ground.

Plaintiffs' conclusory allegations that Wells Fargo's statements were false fail to

state a claim under the CFA for all misstatements except those set out in Paragraph 27 of the First Amended Complaint. Thus, Plaintiffs' CFA claims are dismissed under Rule 9 as to all except for those predicated on the statements described in Paragraph 27.

### B. Breach of Contract (Count Three)

Under Arizona law, a breach of contract claim contains three elements: "an agreement, the right to seek relief, and breach by a defendant." *Narramore v. HSBC Bank USA, N.A.*, No. 09-CV-635-TUC-CKJ, 2010 WL 2732815 at *4 (D. Ariz. July 7, 2010). A plaintiff must also allege that it was damaged as a result of the breach. *Id.* Wells Fargo asserts that Plaintiffs' claim should be dismissed because it fails to allege any agreement with specificity.

Plaintiffs' Complaint alleges a general "contractual relationship which incorporated all aspects of Plaintiffs' financial life." (Doc. 7 ¶ 46.) This allegation fails to state with specificity which agreement forms the basis of Plaintiffs' breach of contract claim or how Wells Fargo breached such an agreement. Combing through the facts alleged in the "Background" section of the Complaint reveals two potential contracts on which Plaintiffs could base their allegation, but Plaintiffs fail to adequately state a claim for either of them.

The Complaint states that the Deed of Trust is "the controlling contractual document." (*Id.* ¶ 26.) The Court will treat the Deed of Trust as a document within the Complaint for the purposes of this Motion to Dismiss because the Complaint specifically refers to it, it is central to Plaintiffs' breach of contract claim, and the parties do not question its authenticity. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Plaintiffs claim that the Deed of Trust sets out in Paragraphs 19 and 22 "the various rights and duties of the parties relating to loss mitigation and foreclosure." Plaintiffs allege that Wells Fargo violated all of these "rights and duties." (Doc. 7 ¶ 26.)

Paragraph 19 sets out the borrower's right to reinstate after acceleration if certain conditions are met. The right is conditioned on the borrower paying off all sums due under the Deed of Trust and Note, curing any other defaults under the agreements, and

paying all expenses incurred in the enforcement of the Deed of Trust. (Doc. 14-A ¶ 19.) Plaintiffs do not allege that Wells Fargo violated this right in their Complaint. The Complaint alleges that Plaintiffs attempted to obtain information about the reinstatement amount from third party Tiffany & Bosco, but that this information was not provided. This does not state a claim against Wells Fargo. Plaintiffs do not allege that Wells Fargo committed any wrongdoing in connection with the reinstatement information. Furthermore, nothing in Paragraph 19 of the Deed of Trust places a duty on Wells Fargo to provide information regarding reinstatement after acceleration. As such, Plaintiffs have failed to adequately allege that Wells Fargo breached Paragraph 19 of the Deed of Trust.

Paragraph 22 requires the lender to provide the borrower with notice prior to acceleration. (*Id.* ¶ 22.) It also requires the lender to give written notice to the trustee, and requires the trustee to record a notice of sale in the county where the property is located. (*Id.*) However, the Complaint does not allege that Wells Fargo failed to provide notice to either Plaintiffs or the trustee as required by the Deed of Trust. Nor does it allege that the trustee failed to record a notice of sale. Thus, Plaintiffs have failed to state a claim on the ground that Wells Fargo violated Paragraph 22 of the Deed of Trust.

The Complaint also alleges that Wells Fargo offered, and Plaintiffs accepted, a loan modification "relating to loss mitigation and foreclosure" and that this modification was incorporated into the "existing contractual relationship of the parties." Plaintiffs do not set out the terms of the alleged loan modification or explain how Wells Fargo breached it. Plaintiffs' bare allegation that "[t]he subsequent breach of the modified terms of the contract by [Wells Fargo] caused damage to Plaintiffs" is a legal conclusion that need not be accepted as true on a motion to dismiss. Lacking any factual allegations setting out the terms of the loan modification or how Wells Fargo violated them, the Complaint fails to "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Plaintiffs have thus failed to state a breach of contract claim on these allegations.

Plaintiffs argue in their Response that Wells Fargo also breached Paragraph 16 of

the Deed of Trust, which incorporates Arizona state law's requirement that a lender "must attempt to contact the borrower to explore options to avoid foreclosure." A.R.S. § 33-807.01. However, Plaintiffs fail to make such allegations in the Complaint. Moreover, Plaintiffs allege throughout their Complaint that Wells Fargo communicated with them repeatedly regarding a potential loan modification to avoid foreclosure. Plaintiffs have thus failed to state breach of contract claim against Wells Fargo. Wells Fargo's Motion to Dismiss Count Three of the First Amended Complaint is granted.

### C.    Violation of A.R.S. Title 33 Chapter 6.1 (Count Four)

Chapter 6.1 of Title 33 of the Arizona Revised Statutes contains twenty-four sections relating to Deeds of Trust. These sections cover everything from appointing successor trustees to the disposition of proceeds from a trustee's sale. *See* A.R.S. § 33-801 et seq. Plaintiffs do not specify which section of Chapter 6.1 Wells Fargo violated. As such, there can be no claim, as the Court cannot discern whether Plaintiffs have adequately plead the elements of the cause of action when Plaintiffs do not specify which cause of action they bring. Thus, Plaintiffs have failed to set forth factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Plaintiffs argue that the Complaint's specific reference to "requirements as to notice and procedure for loss mitigation and foreclosure" are sufficient to put Wells Fargo and the Court on notice of the section of Chapter 6.1 on which Plaintiffs base their claim. In fact, the language referred to by Plaintiffs is general and vague, and Chapter 6.1 contains multiple provisions that might encompass Plaintiffs' allegations. Plaintiffs further argue that it is "ludicrous" for Wells Fargo to suggest that it does not have fair notice of their Chapter 6.1 claim, and point to an article published by Wells Fargo's counsel in which they discuss A.R.S. § 33-807.01, the section on which Plaintiffs apparently rely (though they failed to specify this in their Complaint). However, the fact that a defendant's counsel is aware of a statute does not mean that the defendant is placed on sufficient notice of all possible claims that may be brought against it pursuant to that

statute. Plaintiffs' argument that their general reference to Chapter 6.1 is sufficient to put Wells Fargo and the Court on notice of the specific section on which they intend to rely is without merit. They have failed to state a claim under Title 33, Chapter 6.1 of the Arizona Revised Statutes, and Count Four of their Complaint is dismissed.

### D. Negligent Misrepresentation (Count Five)

Arizona recognizes the tort of negligent misrepresentation as set out in the Restatement (Second) of Torts. *McAlister v. Citibank (Ariz.), a Subsidiary of Citicorp*, 171 Ariz. 207, 215, 829 P.2d 1253, 1261 (Ct. App. 1992). Negligent misrepresentation is defined as supplying "false information for the guidance of others in their business transactions" in the course of the tortfeasor's business, profession, employment, or any other transaction in which he has a pecuniary interest. *St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 154 Ariz. 307, 312, 742 P.2d 808, 813 (1987). Recovery is limited to the persons or limited group of persons "for whose benefit and guidance [the tortfeasor] intends to supply the information." *Id.* Liability is limited in scope "because it is premised on the reasonable expectations of a foreseeable user of information supplied in connection with commercial transactions." *Id.* at 813–14.

As discussed above, Plaintiffs allege a number of false statements throughout the body of the Complaint, and the count of negligent misrepresentation incorporates these allegations. The allegations are set forth succinctly in apparently chronological order. Thus, this count will not be dismissed for failure to set forth "a short and plain statement of the claim." Nevertheless, for the same reasons as discussed above, Plaintiffs have failed to allege anything more than conclusory statements regarding the falsity of the majority of the enumerated statements. However, as before, Plaintiffs have plausibly pled the falsity of the statements set out in Paragraph 27, alleging that Wells Fargo advised them by letter to keep making payments on their mortgage while telling them via representative to ignore those letters. Plaintiffs' negligent misrepresentation claims are thus dismissed as to all allegations except those set out in Paragraph 27.

Wells Fargo also argues that Plaintiffs failed to allege that they justifiably relied

on the misstatements. However, the Complaint expressly states that "Plaintiffs justifiably relied upon the Bank's representations." (Doc. 7 ¶ 53.) Wells Fargo points to no authority stating that reliance must be more specifically pled. Their Motion to Dismiss on this ground is therefore denied.

Wells Fargo finally argues that Plaintiffs have failed to allege that they were harmed by the alleged misrepresentations. However, the Complaint states that the misrepresentations "resulted in damage to Plaintiffs." (*Id.* ¶ 54.) Plaintiffs further allege that Wells Fargo has begun foreclosure proceedings on their home, presumably due to the conflicting statements Plaintiffs received regarding whether to continue making regular payments. (*Id.* ¶¶ 27, 30, 37.) Wells Fargo asserts, without authority, that this cannot constitute harm because Plaintiffs allege that the foreclosure has not yet occurred. (Doc. 14 at 11.) However, in its Reply, Wells Fargo acknowledges that the foreclosure has since occurred. Plaintiffs have thus sufficiently pled damages for the purposes of their negligent misrepresentation claim. The Motion to Dismiss is therefore denied, but only as to the claim supported by the allegations set forth in Paragraph 27 of the Complaint. The negligent misrepresentation claim is otherwise dismissed.

### E. Fraudulent Concealment (Count Six)

Arizona recognizes the tort of fraudulent concealment as set out in the Restatement (Second) of Torts. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 496, 38 P.3d 12, 34 (2002). The tort is defined as concealing or by other action intentionally preventing a party to a transaction from acquiring material information. *Id.*

Though Plaintiffs describe a number of allegedly false statements throughout the Complaint, they do not allege that Wells Fargo intentionally concealed any material fact from them. Plaintiffs' argue in their Response that Wells Fargo failed to fulfill a number of duties set out in the Consent Judgment. (Doc. 22 at 12.) The only duty they specifically allege is the duty to communicate. (*Id.*) Plaintiffs incorrectly state that the existence of a duty to communicate, in and of itself, is sufficient to give rise to liability

for fraudulent concealment. However, as discussed above, the tort of fraudulent concealment contains several elements, including concealment of a material fact. Plaintiffs' First Amended Complaint does not allege that Wells Fargo intentionally concealed any information, or that any such information was material. Thus, their fraudulent concealment claim is dismissed.

### F. Failure to Hire, Train, or Supervise Employees (Count Seven)

In Arizona, the "failure to hire" tort has only been discussed in the context of job applicants bringing suits against prospective employers, and Arizona courts have specified that the Arizona Civil Rights Act does not create common law action for wrongful failure to hire. *Burris v. City of Phoenix*, 179 Ariz. 35, 43, 875 P.2d 1340, 1348 (Ct. App. 1993). Plaintiffs do not cite to any case law that supports a failure to hire claim on the facts of this case. Because a wrongful failure to hire claim does not apply to this context, Plaintiffs' claim on that theory is dismissed.

"For an employer to be held liable for the negligent hiring, retention, or supervision of an employee, a court must first find that the employee committed a tort." *Kuehn v. Stanley*, 208 Ariz. 124, 130, 91 P.3d 346, 352 (Ct. App. 2004). Here, Plaintiffs have not alleged that any individual employee of Wells Fargo committed a tort. Though the allegations set out in Paragraph 27 indicate that a false statement was made, either in the letter or in the Wells Fargo's employee's statement, the Complaint does not specify which of the two was false. Thus, Plaintiffs have failed to allege with sufficient specificity which Wells Fargo employee committed a tort, much less what tort it was, or how Wells Fargo was negligent in hiring, training, or supervising the unidentified employee. As such, their claim that Wells Fargo failed to properly hire, train, or supervise employees fails. Count Seven is dismissed in its entirety.

### G. Violation of Consent Judgment (Count Eight)

Plaintiffs attach to their Complaint a copy of the Consent Judgment entered into by Wells Fargo, the United States, the fifty states, and the District of Columbia. (Doc. 7-1.) The Court will consider this external document on the Motion to Dismiss without

converting it into a motion for summary judgment because it was attached to the Complaint and also because it was incorporated by reference in the Complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Consent Judgment also incorporates in its terms a separate document called the Enforcement Terms. (Doc. 7-1 at 4, ¶ 6.) Plaintiffs do not attach the Enforcement Terms to their Complaint, but rely on its terms and do not contest its authenticity in making their argument in Response. (*See* Doc. 22 at 13.) As such, the Court will also analyze the Enforcement Terms in deciding this Motion, without converting it to a summary judgment motion.

Plaintiffs allege that they are entitled to damages because of Wells Fargo's violation of the Consent Judgment. However, the Consent Judgment expressly limits enforcement of its terms to the parties to the consent judgment and provides that suit may only be brought in the U.S. District Court for the District of Columbia. (Doc. 14-E at E-14, ¶¶ J-1, J-2.) Plaintiffs are not a party to the consent judgment, and thus do not have standing to enforce it against Wells Fargo.

Plaintiffs point to a section in the Consent Judgment that states that "[n]othing in this Section shall limit the availability of remedial compensation to harmed borrowers as provided in Section E.5." (*Id.* at E-14, ¶ J-3.) However, Section E.5 does not provide that any harmed borrower can bring suit against Wells Fargo to enforce the Consent Judgment. (*Id.* at E-11, ¶ E-5.) Rather, Section E.5 places the burden on Wells Fargo to "remediate any material harm to particular borrowers identified through work conducted under the Work Plan." (*Id.*) It does not give Plaintiffs the right to sue to Wells Fargo for violations of the Consent Judgment. As such, Wells Fargo's Motion to Dismiss is granted for Count Eight of the First Amended Complaint.

### H. Constructive Fraud (Count Nine)

Arizona defines the tort of constructive fraud as "a breach of legal or equitable duty which, irrespective of the moral guilt or intent of the party charged, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Rhoads v. Harvey Publications, Inc.*, 145 Ariz.

1 142, 148, 700 P.2d 840, 846 (Ct. App. 1984). For the cause of action to arise, "a relationship, akin to a fiduciary relationship must exist." *McAlister*, 829 P.2d at 1261. The requisite relationship approximates "business agency, professional relationship, or family tie." *Rhoads*, 700 P.2d at 847. If a "relationship of trust and confidence exists between [the] two parties so that one of the places a peculiar reliance in the trustworthiness of another, the latter is under a duty to make a full and truthful disclosure of all material facts and is liable for misrepresentation or concealment." *Id.* at 846–47.

Here, Plaintiffs allege that the requisite relationship existed between themselves and Wells Fargo by citing to four sources of trust and confidence: "the initial contractual relationship between the parties, the parties [sic] joint venture at avoiding a foreclosure . . . , the Arizona statutes . . . , [and] the conduct remedies [from the Consent Judgment]." (Doc. 7 at ¶ 65.) Plaintiffs further allege that Wells Fargo's breach of the duty "would tend to deceive and cause injury to the public interest." (*Id.*)

As an initial matter, neither Arizona law nor the Consent Judgment provides that a heightened relationship, akin to a fiduciary relationship, exists between lenders and mortgagors. *See Gould v. M & I Marshall & Isley Bank*, 860 F. Supp. 2d 985, 989 (D. Ariz. 2012) ("[I]t is well settled in Arizona that a mortgage lender does not owe a fiduciary duty to a borrower.). Nor do mere contractual relationships, without more, give rise to fiduciary duties. *Cook v. Orkin Exterminating Co., Inc.*, 227 Ariz. 331, 334, 258 P.3d 149, 152 (Ct. App. 2011) ("[C]ommercial transactions do not create a fiduciary relationship unless one party agrees to serve in a fiduciary capacity."). Plaintiffs have not alleged that Wells Fargo ever agreed to serve in a fiduciary capacity.

Plaintiffs allege that they and Wells Fargo were in a joint venture for the purpose of avoiding foreclosure. "Joint venture" is a technical legal term—it is defined under Arizona law as "when two or more parties agree to pursue a particular enterprise in the hope of sharing a profit." *Ellingson v. Sloan*, 22 Ariz. App. 383, 386, 527 P.2d 1100, 1103 (1974). Five elements must be present to establish a joint venture: (1) a contract, (2) a common purpose, (3) a community of interest, (4) an equal right of control, and (5)

- 14 -

participation in both profits and losses. *Id.* Plaintiffs' allegation that they were in a joint venture with Wells Fargo is a legal conclusion that need not be accepted as true on a Motion to Dismiss. Further, the factual allegations set forth in the body of the Complaint do not support the existence of a joint venture. Plaintiffs allege that they entered into a contract to modify the contract terms of their loan. (Doc. 7 at ¶ 26.) They do not, however, allege that the contract was entered into for the common purpose of pursuing a profit. Nor do any of the allegations support the conclusion that Plaintiffs and Wells Fargo would both participate and share profits and losses in the joint venture of avoiding a foreclosure. As such, Plaintiffs have failed to allege facts that would support the existence of a joint venture.

Plaintiffs also seem to contend that a special relationship exists between them and Wells Fargo because Wells Fargo's alleged breach would injure the public interest. This argument conflates two elements of the constructive fraud claim—in order for a duty to arise, a special relationship must exist, and in order for that duty to be breached and the breach to constitute fraud, the action must harm the public interest. The allegation that Wells Fargo's actions harm the public interest does not support the claim that Wells Fargo owed a special, fiduciary duty to Plaintiffs.

Plaintiffs argue in their Response that by supplying loan-related information and telling Plaintiffs to ignore legal notices, Wells Fargo formed a de facto attorney-client relationship with them. (Doc. 22 at 13–14.) An attorney-client relationship can be formed without express mutual consent between the parties. *Paradigm Ins. Co. v. Langerman Law Offices, P.A.*, 200 Ariz. 146, 148, 24 P.3d 593, 595 (2001). The relationship arises when: "(1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and . . . (2) the lawyer manifests to the person consent to do so." *Id.* (quoting Restatement (Third) of the Law Governing Lawyers § 14). Here, however, Plaintiffs have alleged neither of the two elements. Plaintiffs have not even alleged that any of the Wells Fargo representatives with whom they communicated were lawyers or that Plaintiffs believed them to be lawyers. Nor have they alleged that they

1 manifested intent for any of the representatives to provide legal services and the representatives consented. As such, Plaintiffs' assertion that a de facto attorney-client relationship formed is not supported by factual allegations in the Complaint.

Plaintiffs have not alleged any facts that would plausibly support the element of the heightened, fiduciary relationship necessary to the constructive fraud cause of action. Thus, they have failed to state a constructive fraud claim and Wells Fargo's Motion to Dismiss is granted on Count Nine.

### I. Equitable Estoppel (Count Ten)

Arizona defines equitable estoppel as "an affirmative misrepresentation of a present fact or state of facts and detrimental reliance by another thereon." *Tiffany Inc. v. W. M. K. Transit Mix, Inc.*, 16 Ariz. App. 415, 419, 493 P.2d 1220, 1224 (1972). In Arizona, equitable estoppel "is available only as a defense, while promissory estoppel can be used as a cause of action for damages." *Id.* However, Arizona courts have allowed claims based on equitable estoppel to continue as promissory estoppel claims if the plaintiffs adequately alleged the elements of promissory estoppel. *Gorman v. Pima Cnty.*, 230 Ariz. 506, 287 P.3d 800, 804 n.4 (Ct. App. 2012). "The critical distinction between the two is that equitable estoppel refers to reliance on a misrepresentation of some present or past fact, whereas 'promissory estoppel rests upon a promise to do something in the future.'" *Id.* (citing *Trollope v. Koerner*, 106 Ariz. 10, 18, 470 P.2d 91, 99 (1970)). Otherwise, "promissory estoppel includes all elements of equitable estoppel." *Id.*

Estoppel as a cause of action contains three elements: "(1) the party to be estopped commits acts inconsistent with a position it later adopts; (2) reliance by the other party; and (3) injury to the latter resulting from the former's repudiation of its prior conduct." *Id.* Here, Plaintiffs allege reliance and injury in the section of their Complaint asserting equitable estoppel as a cause of action. (Doc. 7 at ¶ 69.) However, in alleging the first element, they refer generally to the factual allegations made in the Background section of their Complaint. (*Id.*)

The only factual allegations in the Complaint that set out inconsistent acts by

Wells Fargo are in Paragraph 27, where Plaintiffs allege that they received letters from Wells Fargo advising them to continue making regular mortgage payments, while also receiving advice from a Wells Fargo representative to ignore those letters. (*Id.* at ¶ 27.) The rest of the Complaint conclusorily alleges that Wells Fargo representatives made statements that were false, without specifying subsequent inconsistent actions or positions taken by Wells Fargo. As such, Plaintiffs have stated a claim of promissory estoppel only as to the factual allegations set out in Paragraph 27 of the Complaint. Wells Fargo's Motion to Dismiss is granted to the extent the action for estoppel relies on other factual allegations in the Complaint.

### H.     Breach of Duty of Good Faith and Fair Dealing (Count Eleven)

The duty of good faith and fair dealing is implied in every contract. *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565, 569 (1986). That duty prohibits either party from acting "to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Id.* "[B]ecause a party may be injured when the other party to a contract manipulates bargaining power to its own advantage, a party may nevertheless breach its duty of good faith without actually breaching an express covenant in the contract." *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 491, 38 P.3d 12, 29 (2002).

Here, Plaintiffs have failed to identify any benefit under the Deed of Trust or the alleged loan modification contract that was impaired by Wells Fargo. The closest that they come is their allegations regarding their right to reinstatement as set forth in the Deed of Trust. As discussed above, however, Plaintiffs did not allege that Wells Fargo impaired this right—they alleged that the trustee, Tiffany & Bosco, failed to provide information regarding the reinstatement amount. (Doc. 7 at 33.) They do not allege that Wells Fargo had anything to do with this failure to provide information.

Plaintiffs' assertions throughout the Complaint generally allege that Wells Fargo made a wealth of false statements to them regarding the status of their loan modification application (though they do not specify how those statements were false). Nothing in the

Deed of Trust or the alleged loan modification contract, however, guarantees Plaintiffs the right to receive truthful information about the loan modification process. Thus, Plaintiffs have failed to state a claim that Wells Fargo breached of the duty of good faith and fair dealing.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss of Defendant Wells Fargo Bank, N.A. (Doc. 14) is **GRANTED** as to Counts 3, 4, 5, 6, 7, 8, 9, and 11 of the First Amended Complaint. However, the Motion to Dismiss is **DENIED** as to Counts 1, 2, and 10, but only to the extent that those Counts rely on the allegations set forth in Paragraph 27 of the First Amended Complaint.

Dated this 25th day of June, 2013.

/s/ A. Murray Snow
G. Murray Snow
United States District Judge